IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ARCHER FARMS, et al.                                          PLAINTIFFS

v.                                        CIVIL ACTION NO. 3:24-CV-327-SA-JMV

UMB BANK, N.A. and HORNE LLP                                 DEFENDANTS

*And*

JENNINGS PLANTING COMPANY, LLC, et al.                       PLAINTIFFS

v.                                       CIVIL ACTION NO. 3:24-CV-328- SA-JMV

UMB BANK, N.A. and HORNE LLP                                 DEFENDANTS

*And*

KMC FARMS, et al.                                            PLAINTIFFS

v.                                       CIVIL ACTION NO. 3:24-CV-329- SA-JMV

UMB BANK, N.A. and HORNE LLP                                 DEFENDANTS

*And*

PORTER PLANTING COMPANY, et al.                              PLAINTIFFS

v.                                       CIVIL ACTION NO. 3:24-CV-330- SA-JMV

UMB BANK, N.A. and HORNE LLP                                 DEFENDANTS

ORDER AND MEMORANDUM OPINION

Plaintiffs initiated this civil action on September 20, 2024, in the Circuit Court of Leflore

County, Mississippi, pursuing state law claims against UMB Bank, N.A. and Horne LLP

(collectively "Defendants").[1] Horne, the only non-diverse defendant, removed the action to this

_____

[1] The Court notes that four parallel lawsuits, including this action, were filed in the Circuit Court of Leflore
County, Mississippi on or about the same date, and all were later removed to this court on October 18, 2024
on the same jurisdictional bases. The Court subsequently consolidated the cases with the first-filed action—

Court on October 18, 2024, premising jurisdiction on the Class Action Fairness Act ("CAFA") under 28 U.S.C. § 1332(d) and federal bankruptcy under 28 U.S.C. § 1334. Alternatively, Horne asserts that the Court has diversity jurisdiction under 28 U.S.C. § 1332 because it is improperly joined. Plaintiffs subsequently filed a Motion to Remand [15] arguing that all bases for removal are without merit.[2] The Motion [15] has been fully briefed and is ripe for review.

*Relevant Factual and Procedural Background*

Plaintiffs bring this case against Defendants for their alleged involvement in the fraud perpetrated against Plaintiffs by Express Grain Terminals, LLC ("EGT")—an insolvent Mississippi grain dealer and nonparty to this lawsuit. The Plaintiffs include farmers and farm entities engaged in farming operations in Leflore County, Mississippi and/or other Mississippi Delta counties and surrounding areas. UMB Bank was EGT's primary lender. Horne is an accounting firm that audited EGT's financial statements for several years.

As a grain dealer, EGT purchased grain from Mississippi farmers, stored that grain in its silos, and later sold it on the open market. During the 2021 harvest season, Plaintiffs delivered their grain to EGT in exchange for promises that they would be respectively paid on a future date. Plaintiffs allege that EGT made false statements about its financial stability at that time. Instead of remitting payment to the Plaintiffs for their 2021 harvest, EGT filed for bankruptcy in the United

---

*Archer Farms, et al. v. UMB Bank, N.A.*, Civil Action No. 3:24-cv-327-SA-JMV—being the instant lead case. *See* [35] at p. 3.

[2] Duplicative motions to remand were filed in all member cases prior to the consolidation: Motion to Remand [19] in *Jennings Planting Company, LLC, et al. v. UMB Bank, N.A.*, Civil Action No. 3:24-cv-328-SA-JMV; Motion to Remand [18] in *KMC Farms, et al. v. UMB Bank, N.A.*, Civil Action No. 3:24-cv-329-SA-JMV; and Motion to Remand [20] in *Porter Planting Company, et al. v. UMB Bank, N.A.*, Civil Action No. 3:24-cv-330-SA-JMV. In referencing the instant Motion [15], the Court incorporates in its reference all pending motions to remand in the member cases.

States Bankruptcy Court for the Northern District of Mississippi in September 2021.[3] The Plaintiffs did not receive compensation for their grain from the bankruptcy estate.

According to the Complaint [2], Defendants knew or should have known of EGT's dire financial condition but, for their own gain, failed to take appropriate action, resulting in Plaintiffs' loss.

As to Horne, the Complaint [2] alleges that, in addition to auditing EGT for several years prior to 2021, it completed an audit of EGT about four weeks prior to EGT's bankruptcy filing and failed to identify and report EGT's fraudulent transactions that "[e]ven the most simplistic and elementary audit would have revealed[.]" [2] at p. 18. Plaintiffs allege that Horne had a duty to disclaim that it could not properly certify its 2021 audit of EGT on EGT's financial statements or resign as EGT's auditor and that either of these actions would have resulted in EGT's noncompliance with the Mississippi Department of Agriculture and Commerce's licensing requirements. Plaintiffs acknowledge that Horne included a "going concern statement" as to EGT on the audited financial statements (which John Coleman removed from the submissions to MDAC) but, despite this, Horne never investigated why EGT continued to receive its license from MDAC. *Id.* at p. 16. Additionally, Plaintiffs allege that Horne failed to notify the majority owner of EGT, Dr. Michael Coleman, of the company's financial situation.[4] In other words, they allege that Horne could and should have prevented EGT from maintaining its grain dealer license but

---

[3] The Complaint [2] alleges that John Coleman, EGT's Chief Executive Officer, was the mastermind of the fraud committed against them. John Coleman prepared counterfeit financial statements and submitted them to the Mississippi Department of Agriculture and Commerce ("MDAC") as early as 2018. Grain dealers are required to submit accountant-certified financial statements to MDAC for licensing renewals. Horne allegedly audited the company since 2018.

[4] As further discussed hereinafter, Plaintiffs allege that Dr. Michael Coleman has assigned his claims against Horne to them and they bring those assigned claims in this lawsuit.

Horne's omissions instead allowed EGT to maintain its license through the time they turned over their grain.

With respect to UMB Bank, the Complaint [2] alleges that it also knew of EGT's suspicious business activity and financial situation yet acted strategically to protect its interest as EGT's secured lender. Plaintiffs allege that in December 2020, an officer of UMB Bank falsely assured to a MDAC investigator that EGT's "financial condition was just fine." [2] at p. 23. Similar to the allegations against Horne, Plaintiffs aver that UMB Bank "allowed EGT to remain open as a grain dealer and warehouse" through its misrepresentations to MDAC. *Id*. They also allege that UMB Bank knew or should have known that EGT's outstanding multimillion-dollar loan with UMB Bank was "non-performing" in June 2021. *Id*.

On September 28, 2021, UMB Bank filed a Receivership Complaint against John Coleman, which forced EGT to file for bankruptcy the next day. In short, Plaintiffs allege that the timing of UMB Bank's Receivership Complaint indicates a "scheme" to seize Plaintiffs' unpaid grain and recover its sale proceeds as collateral, given the bank's prior knowledge of EGT's insolvency and the agricultural industry as a whole. *Id*. at p. 26.

Plaintiffs bring claims arising solely under state law, including aiding and abetting fraud, negligence, negligent misrepresentation, unjust enrichment, and tortious interference against both Defendants. They also bring those claims assigned to them by Dr. Michael Coleman against Horne including breach of contract and breach of implied duty of good faith and fair dealing.

Horne removed the action to this Court on October 18, 2024, alleging that jurisdiction existed at the time of removal because (1) this lawsuit is a "mass action" under CAFA, (2) this lawsuit "relates to" a Chapter 11 bankruptcy and is a "core bankruptcy proceeding," (3) and, alternatively, Horne, the only non-diverse defendant, was improperly joined. [1] at p. 5, 7. On

4

November 7, 2024, Plaintiffs moved to remand the action to state court, contending that all bases for removal are meritless. *See* [15]. Defendants oppose the Motion [15].

*Removal Standard*

"'Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims.'" *Trend Intermodal Chassis Leasing LLC v. Zariz Transp. Inc*., 711 F. Supp. 3d 627, 634 (N.D. Tex. 2024) (quoting *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998)). "The Court 'must presume that a suit lies outside this limited jurisdiction[.]'" *Id*. (quoting *Howery v. Allstate Ins. Co.*, 242 F.3d 912, 916 (5th Cir. 2001)). Accordingly, "'the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference.'" *Id*. (quoting *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988)).[5]

After a case is removed to federal court, a plaintiff may move for remand. 28 U.S.C. § 1447(c). Once a motion to remand has been filed, the burden is on the removing party to establish that federal jurisdiction exists. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). The Fifth Circuit has held that the removal statutes are to be construed "strictly against removal and for remand." *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941).

Importantly, "[s]ubject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint." *Safranek v. USAA Cas. Ins. Co.*, 525 F. Supp. 3d 707, 714 (M.D. La. 2021) (citing *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)). Remand is proper "[i]f at any time…it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

---

[5] Specific removal standards apply to each jurisdictional basis asserted in this case. The Court will outline those standards more fully hereinafter.

5

*Analysis and Discussion*

Again, Horne alleges that this Court has jurisdiction under 28 U.S.C. § 1332(d) (CAFA), 28 U.S.C. § 1334(a) (federal bankruptcy jurisdiction), or, alternatively, 28 U.S.C. § 1332(a) (based on improper joinder). The Court will address each in turn.

I.   CAFA

Class and mass actions arising under CAFA and filed in state court may be removed to federal court pursuant to 28 U.S.C. § 1453. *See* 28 U.S.C. § 1453(b); *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165-66, 134 S. Ct. 736, 187 L. Ed. 2d 654 (2014). While the general removal statute "is strictly construed and doubts as to the propriety of removal should be resolved in favor of remand, no antiremoval presumption attends cases involving CAFA[.]" *Safranek*, 525 F. Supp. 3d at 714 (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89, 135 S. Ct. 547, 190 L. Ed. 2d 495 (2014)) (internal quotation marks omitted). "Still, the removing party has the burden of proving CAFA jurisdiction" *Id.* (citations omitted).

"[C]ertain jurisdictional provisions of the Class Action Fairness Act" are codified in 28 U.S.C. § 1332(d). *Turner v. Alford, Holloway, & Smith, PLLC*, 2024 WL 2978471, *2 (S.D. Miss. June 13, 2024). "CAFA authorizes the removal of 'mass actions,' defined as 'any civil action…in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact.'" *Lester v. Exxon Mobil Corp.*, 879 F.3d 582, 586 (5th Cir. 2018) (quoting 28 U.S.C. § 1332(d)(11)(B)(i)). "Excluded from that definition is any civil action in which 'the claims are joined upon motion of a defendant,' or 'the

claims have been consolidated or coordinated solely for pretrial proceedings." *Id.* (quoting 28 U.S.C. § 1332(d)(11)(B)(ii)(II), (IV)).[6]

Accordingly, the number of plaintiffs as well as any proposal on their part to have their claims jointly tried is crucial for this Court's jurisdictional analysis under CAFA. As an aside, the Court notes that it proposed the consolidation of the four lawsuits into this lead case via Show Cause Order [32]. *See* [32].[7] Prior to consolidation, none of the four lawsuits individually met the numerosity requirement under CAFA.[8] After the consolidation of the cases, there is an aggregate total of 126 Plaintiffs involved in this lead case.

As to the parties' respective positions regarding consolidation of the cases, UMB Bank did not respond to the Court's Show Cause Order [32]. Plaintiffs opposed consolidation for purposes of discovery or trial but did not oppose it for purposes of the Court's consideration of the duplicative motions to remand filed in all four suits. Horne did not oppose consolidation and disclaimed that, in doing so, it was not moving for consolidation. Horne also made the following statement in its Response [33] to the Show Cause Order [32]: "Horne further believes that the Court's understanding of the case law confirms that Plaintiffs in all four pending matters have proposed a joint trial establishing [CAFA] jurisdiction." [33] at p. 2.

With this background in mind, the Court makes clear that—in proposing and subsequently consolidating the four lawsuits for all purposes including trial—it did not confirm CAFA jurisdiction nor did it provide any opinion as to the parties' intent in opposing or consenting to the

---

[6] The amount in controversy and minimal diversity requirements of CAFA are not at issue in this case.

[7] The Court proposed consolidation pursuant to Federal Rule of Civil Procedure 42(a), which provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." FED. R. CIV. P. 42(a).

[8] Specifically, in reviewing each of the four complaints filed in the member cases, the number of named plaintiffs are as follows: 39 in *Archer Farms*; 42 in *Jennings Planting Company, LLC*; 42 in *KMC Farms*; and 3 in *Porter Planting Company*.

consolidation. The Court's sua sponte action simply has no bearing on its CAFA jurisdictional analysis. *See Lester*, 879 F.3d at 587 (explaining that CAFA's applicability could not turn on the fact that the state trial court had employed a measure to try some of the individual claims in small clusters). Having addressed this point out of an abundance of caution, the Court now turns to the parties' arguments as to whether this lawsuit meets the definition of a "mass action" for purposes of CAFA.

In their Motion to Remand [15], Plaintiffs take the position that CAFA does not support this Court's jurisdiction because this case is not a "mass action" as defined by the Act. Specifically, they argue that "there are fewer than 100 plaintiffs in this action, and Plaintiffs have not requested a joint trial of more than 100 plaintiffs' claims." [16] at p. 16. For its part, Horne[9] argues that the Plaintiffs have implicitly proposed a joint trial of claims of more than 100 persons in filing four identical lawsuits which in the aggregate include 126 plaintiffs.[10] Horne also points out that one of the member cases names three Plaintiffs who are the proposed class representatives in a class action filed in the United States District Court for the Southern District of Mississippi.[11]

In support of its position, Horne relies on three cases including *Lester*, *Abbott*, and *Atwell*— all of which are unavailing.

Start with *Lester*. In that case, the plaintiffs moved to consolidate their three-plaintiff lawsuit with a parallel lawsuit involving 500 plaintiffs. *Lester*, 879 F.3d at 585. The defendant, ExxonMobil Oil Corporation, then removed both actions to federal court claiming the cases were

---

[9] UMB Bank does not address CAFA jurisdiction in its Response Memorandum [30] but does join in Horne's arguments. *See* [30] at p. 7.

[10] In its Response Memorandum [28], Horne states that there is an aggregate total of 131 Plaintiffs involved in all member cases, which differs from the Court's count. Nonetheless, it is undisputed that, if considered in the aggregate, there would be more than 100 Plaintiffs total.

[11] *See Island Farms, LLC, et al v. UMB Bank, N.A., et al.*, S.D. Miss. Case No. 3:21-cv-721-HTW-LGI ("the Southern District class action").

removable as a newly commenced mass action under CAFA. *Id.* The Fifth Circuit affirmed the district court's denial of the plaintiffs' motion to remand holding that the plaintiffs' consolidation motion effectively proposed a joint trial of claims of 100 or more plaintiffs. *Id.* at 588.

Similarly in *Abbott*, the Seventh Circuit reversed a district court's granting of the plaintiffs' motion to remand where the plaintiffs had moved to consolidate ten separate lawsuits (totaling 100-plus plaintiffs in the aggregate) "through trial." *In re Abbott Lab'ys, Inc.*, 698 F.3d 570-71 (7th Cir. 2012). *Atwell* involved a similar scenario where the Eighth Circuit vacated a district court's order remanding three cases where the three plaintiff groups (totaling more than 100 plaintiffs) had filed motions "for assignment [of all three cases] to a single judge[.]" *Atwell v. Bos. Sci. Corp.*, 740 F.3d 1160, 1165-66 (8th Cir. 2013).

While the Court agrees that the above cases provide examples of ways a joint trial may be implicitly proposed other than the filing of a single complaint, they are distinguishable from the case at bar. Unlike all cases cited by Horne, the Plaintiffs in this case did *not* move for consolidation of the four separate lawsuits and expressly opposed consolidation for purposes of trial in their Response [34] to the Court's Show Cause Order [32].

Next, Horne argues that the Plaintiffs have proposed a joint trial of their claims by bringing Dr. Michael Coleman's assigned claims, which can only be tried once. This argument is a non-starter. While this fact may present a res judicata issue, any preclusive effect of bringing those claims in separate lawsuits is irrelevant at this juncture. This is especially the case absent any action on the part of the Plaintiffs to conduct a bellwether trial followed by the application of claim or issue preclusion to other plaintiffs. *See Lester*, 879 F.3d at 588 (explaining this scenario in dicta as an example of an implicit proposal of joint trial derived from Seventh Circuit case law). That

scenario is not at play in this case. Here, the assigned claims are simply part of Plaintiffs' common claims, which the Plaintiffs elected to bring via four separate lawsuits as explained above.

Finally, Horne also argues that all Plaintiffs in this action meet the class definition proposed in the Southern District class action and that three Plaintiffs in this case are the named, would-be class representatives in that class action. As Horne points out, only three Plaintiffs in this case are named plaintiffs in the Southern District class action, while approximately 123 of the Plaintiffs in this case are not named in that action. Again, any preclusive effect that action has on those particular three Plaintiffs' claims is not relevant to this Court's jurisdictional analysis. Here, the Court is tasked with determining whether the Plaintiffs *in this case* have proposed a joint trial of their claims. Irrespective of a parallel class action lawsuit pending in the Southern District, the Plaintiffs *in this case* have not done so.[12]

Plaintiffs rely on *Eagle U.S. 2, L.L.C. v. Abraham*, 627 F. App'x 351 (5th Cir. 2015), an unpublished Fifth Circuit case which is more in line with the facts of this case. In *Eagle*, upon reviewing a district court's decision to remand a case to state court, the Fifth Circuit found that it had no appellate jurisdiction under 28 U.S.C. § 1453(c)(1). *Id*. at 353. In that case, twenty-three named plaintiffs initially filed suit in Louisiana state court, and the defendants removed the case to federal court premising jurisdiction on CAFA. *Id*. The defendants alleged that the case was "one of 77 complaints filed by the same lawyers making identical claims on behalf of more than 1,700 plaintiffs" and that CAFA's numerosity requirement was satisfied because "the fact that plaintiffs counsel broke up their client base into multiple suits making identical allegations is not a tactic

---

[12] Notably, Horne does not cite any authority for the proposition that the Court should recognize an implicit proposal for a joint trial due to the existence of a parallel class action involving a small number of the same Plaintiffs as the instant case. Aside from the matters the Court has already addressed, Horne does not provide any further argument nor authority to support its position. It bears repeating that Horne, as the removing party, bears the burden of proving CAFA jurisdiction. *See Safranek*, 525 F. Supp. 3d at 714.

that prevents the assertion of jurisdiction under CAFA." *Id*. The Fifth Circuit disagreed, explaining that the numerosity requirement could not be satisfied "by piercing the pleadings across multiple state court actions when the plaintiffs have not proposed that those actions be tried jointly or otherwise consolidated." *Id*.

As the state court cases in *Eagle*, none of the member cases here individually involve 100-plus Plaintiffs. Again, like the plaintiffs in *Eagle*, Plaintiffs in this case have not proposed a joint trial of their claims, through their pleadings or otherwise. Resultantly, the Court cannot consider the total number of Plaintiffs in the aggregate, therefore, CAFA's numerosity requirement is not met.

For the reasons set forth above, the Court finds that it lacks CAFA jurisdiction.

## II.    *Improper Joinder*

Horne, the only non-diverse defendant, also removed this action on the basis of diversity jurisdiction, alleging that it was improperly joined as a defendant.[13]

A party may remove an action from state court to federal court if the action could have originally been brought in federal court. *See* 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties. *See* 28 U.S.C. § 1332(a).

Diversity jurisdiction, as prescribed by Section 1332, requires that "all persons on one side of the controversy be citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co*., 542 F.3d 1077, 1079 (5th Cir. 2008) (internal quotation marks omitted). "There

---

[13] The Notice of Removal [1] alleges that the Plaintiffs are Mississippi citizens; Horne is an improperly joined Mississippi citizen; and UMB Bank is a citizen of Missouri. *See* [1] at p. 12. The Notice of Removal [1] further asserts, and the Plaintiffs do not dispute, that the amount is controversy is satisfied on the face of the Complaint [2].

is, however, a narrow exception to that rule for situations of improper joinder…" *Vaillancourt v. PNC Bank, Nat. Ass'n*, 771 F.3d 843, 847 (5th Cir. 2014). Under the improper joinder doctrine, "a district court is prohibited by statute from exercising jurisdiction over a suit in which any party, by assignment or otherwise, has been *improperly* or *collusively* joined to manufacture federal diversity jurisdiction." *Smallwood v. Illinois Cent. R. Co*., 385 F.3d 568, 572 (5th Cir. 2004) (citing 28 U.S.C. § 1359) (emphasis in original).

In the Fifth Circuit, improper joinder may be established by showing "either that: (1) there was actual fraud in the pleading of jurisdictional facts; or (2) the plaintiff is unable to establish a cause of action against the non-diverse defendant in state court." *Williams v. Homeland Ins. Co. of New York*, 18 F. 4th 806, 812 (5th Cir. 2021) (citing *Smallwood*, 385 F.3d at 573). At issue here is the second scenario.

"To show that a plaintiff cannot establish a cause of action against the non-diverse party in state court, a defendant must show 'that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.'" *Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 473 (5th Cir. 2022) (quoting *Smallwood*, 385 F.3d at 573). Notably, the removing party bears the burden of establishing improper joinder. *Williams*, 18 F. 4th at 812.

"The district court may resolve this issue in one of two ways." *Smith v. Petsmart Inc.*, 278 F. App'x 377, 379 (5th Cir. 2008). "First, '[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant.'" *Id*. (quoting *Smallwood*, 385 F.3d at 573). "In cases in which the 'plaintiff has stated a claim, but has misstated or omitted discrete facts that

would determine the propriety of joinder…the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id*. (quoting *Smallwood*, 385 F.3d at 573).[14] Importantly, "[a]ll disputed issues of fact and any ambiguities of state law must be resolved in the [Plaintiffs'] favor." *Id*. (citing *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003)).

As previously noted, Plaintiffs only bring claims arising under Mississippi law. The first claim in the Complaint [2] against Horne is aiding and abetting fraud. The parties dispute the viability of this claim.

In short, it is unclear whether Mississippi recognizes the tort of aiding and abetting fraud. On one hand, the Plaintiffs argue that the Mississippi Supreme Court first recognized the claim in *Hutto v. Kremer*, 76 So. 2d 204 (Miss. 1954)—an action involving the erroneous harvest of timber beyond the boundaries set out in a timber deed. There, the court did not find error in the trial court's jury instruction regarding an adjoining landowner's liability where he allegedly induced a co-defendant to wrongfully cut timber on the plaintiff's land by misrepresenting the property boundaries. *Id*. at 383. The Mississippi Supreme Court, quoting Cooley on Torts, noted that "'[a]ll who actively participate in any manner in the commission of a tort, or who command, direct, advise, encourage, aid or abet its commission, are jointly and severally liable therefore.'" *Id*. (quoting Cooley on Torts, § 74 (4th Ed.)). Plaintiffs also argue that federal courts in Mississippi have on several occasions predicted that the Mississippi Supreme Court would recognize such a claim. *See, e.g.*, *Dale v. Ala Acquisitions, Inc.*, 203 F. Supp. 2d 694, 700 (S.D. Miss. 2002) ("Moreover, while the Mississippi Supreme Court has not expressly recognized the tort of aiding and abetting fraud, this court predicts that such a claim is viable under Mississippi law."). This

---

[14] The Court notes that only UMB Bank included exhibits with its Response [29] to the Motion to Remand [15]. Nonetheless, a summary inquiry is unnecessary and the Court therefore limits its analysis to the allegations in the Complaint [2].

prediction appears to be based on the language of the Second Restatement of Torts § 876(b), which other states have relied on in recognizing the claim. *See id.*

On the other hand, Defendants point out that the Circuit Court of Tallahatchie County has dismissed claims for aiding and abetting fraud in a parallel lawsuit involving other plaintiff farmers, and the Mississippi Supreme Court denied a petition for interlocutory review of the dismissal. Defendants also cite federal bankruptcy cases which state that no Mississippi court has recognized the claim pursuant to § 876(b) of the Restatement.

The Court notes that it is "'precluded…from applying an *Erie* analysis in determining an [improper] joiner issue[.]'" *Wheeler v. UMB Bank, N.A.*, 664 B.R. 121, 133 (N.D. Miss. 2024) (quoting *Fairley v. ESPN, Inc.*, 879 F. Supp. 2d 552, 556 (S.D. Miss. 2012)). Therefore, unlike some federal courts which have made predictions as to the viability of this claim, this Court, considering the current procedural posture of this case, must resolve any ambiguities of state law in Plaintiffs' favor. *See Travis*, 326 F.3d at 649. Taking this into account, the Court acknowledges Defendants' position that the Mississippi Supreme Court has recently declined to review an issue surrounding this particular claim. However, at the same time, this Court is unaware of any case where the Mississippi Supreme Court has ruled that the claim does *not* exist.

It is not clear that the *Hutto* court implicitly recognized an aiding and abetting fraud claim. It does appear, though, that the court recognized some form of aiding and abetting the commission of a tort (in that case trespass) and affirmed the trial court's instruction to the jury as to that claim. *Hutto*, 76 So. 2d at 383. But it is unclear if such a claim is equally cognizable for aiding and abetting *any* tort, including fraud, or just trespass. Plaintiffs argue that the earlier applies. They claim that Horne aided and abetted EGT's fraud by certifying the company's audits. Horne does not attempt to distinguish *Hutto* in its briefing, and UMB Bank appears to argue that *Hutto* applied

only to trespass. The Court is likewise uncertain of the elements of the claim *if the Hutto* court in fact recognized the claim.[15] Ultimately, the Court finds that there is ambiguity in Mississippi law as to the claim of aiding and abetting fraud. This ambiguity favors remand. *See Smith*, 278 F. App'x at 381-82 (holding proper joinder where Mississippi law unclear on defendant's liability).

Notably, this Court reached the same result in *Wheeler v. UMB Bank, N.A.*, 664 B.R. 121 (N.D. Miss. 2024), a parallel lawsuit involving an aiding and abetting fraud claim brought by other plaintiff farmers against the same defendants. In *Wheeler*, this Court found "ambiguities in Mississippi law as to whether aiding and abetting fraud is a cognizable claim or whether establishing a duty is a required element of such claim." *Id*. at 133. Horne was not found to be improperly joined in that case and this Court sees no reason to depart from its previous holding.

In light of the above, the Court cannot definitively conclude that there is no possibility of recovery against Horne.[16] Horne has not met its burden to establish that it was improperly joined as a defendant in this case. Therefore, diversity jurisdiction does not exist.[17]

III.   *Bankruptcy Jurisdiction*

A case may also be removed to the federal district court "for the district where such civil action is pending, if such district court has jurisdiction… under [§] 1334[,]" which provides for jurisdiction over certain bankruptcy matters. 28 U.S.C. § 1452(a). According to Horne, this action

---

[15] UMB Bank argues that the Court should consider the essential elements of the claim as recognized by jurisdictions outside of Mississippi. Again, the Court cannot predict that the same elements would apply.

[16] It is worth repeating that "[a]s the removal statute is strictly construed in favor of remand, 'any doubt about the propriety of removal must be resolved in favor of remand.'" *KSN Hosp. LLC v. Great Lakes Ins. SE*, 640 F. Supp. 3d 725, 730 (S.D. Tex. 2022) (quoting *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007)).

[17] Having resolved the ambiguity as to the aiding and abetting fraud claim in Plaintiffs' favor, the Court need not analyze the remainder of Plaintiffs' state law claims.. *See Wheeler*, 664 B.R. at 133; *New Orleans City v. Aspect Energy, L.L.C.*, 126 F.4th 1047, 1052 (5th Cir. 2025) ("[T]he existence of even a single valid cause of action against in-state defendants…requires remand of the entire case to state court.") (quoting *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 412 (5th Cir. 2004)).

is "integrally connected to [EGT's] bankruptcy proceeding: *In re Express Grains Terminals, LLC,* No. 21-11832 (Bankr. N.D. Miss.)." [28] at p. 2. Horne therefore alleges that this Court has federal bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334(a)-(b) and 28 U.S.C. § 157(a)-(b).[18] The Court will address each section of these statutes in turn.

### A. "Related To" Bankruptcy (28 U.S.C. § 1334(a)-(b))

"Section 1334 grants the federal district courts jurisdiction over four types of bankruptcy matters: (1) 'cases under title 11,' (2) 'proceedings arising under title 11,' (3) proceedings 'arising in' a case under title 11, and (4) proceedings 'related to' a case under title 11." *In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002). The first category, derived from Section 1334(a), "refers to the bankruptcy petition itself." *Id.* (citing *In re Wood*, 825 F.2d 90, 92 (5th Cir. 1987)). This action does not involve the bankruptcy proceedings itself. Therefore, the Court easily rejects the argument that Section 1334(a) confers jurisdiction.

"The second, third, and fourth categories, all listed in [Section] 1334(b), 'operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least "related to" the bankruptcy.'" *Id.* at 304 (citing *Wood*, 825 F.2d at 92). "A proceeding is 'related to' a bankruptcy if 'the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy.'" *Id.* (citation omitted; emphasis in original). "Certainty is unnecessary; an action is 'related to' bankruptcy if the outcome *could* alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate." *Farmers & Merchants Bank v. D & G Invs. MS, LLC*, 2024 WL 5058969, *1 (N.D. Miss. Dec. 10, 2024) (citations omitted; emphasis in original).

---

[18] UMB Bank does not address Bankruptcy jurisdiction in its Response Memorandum [30] but does join in Horne's arguments. *See* [30] at p. 7.

Generally, "after 'a debtor's reorganization plan has been confirmed…bankruptcy jurisdiction[] ceases to exist.'" *In re Chesapeake Energy Corp.*, 70 F.4th 273, 281 (5th Cir. 2023) (quoting *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001)). Therefore, "[f]ollowing the confirmation of a Chapter 11 reorganization plan, bankruptcy jurisdiction is limited to matters 'pertaining to the implementation or execution of the plan.'" *Id*. (quoting *Craig's Stores*, 266 F.3d at 390). The Fifth Circuit considers the three *Craig's Stores* factors as "'useful heuristic' for determining whether a matter concerns the effectuation of the plan," including (1) whether "the claims at issue 'principally deal[] with post-confirmation relations between the parties;'" (2) whether "there [was] 'antagonism or [a] claim pending between the parties as of the date of the reorganization;'" and (3) whether "any 'facts or law deriving from the reorganization or the plan [are] necessary to the claim[.]'" *Id*. at 283.

The parties do not dispute that a confirmation plan was entered in EGT's bankruptcy proceeding in March 2023, approximately a year and a half before all the member cases were initiated in the Circuit Court of Leflore County, Mississippi. However, they do dispute whether the instant action relates to the implementation or execution of EGT's bankruptcy confirmation plan. Notably, despite bearing the burden of establishing federal jurisdiction as the removing party, Horne fails to address any of the *Craig's Stores* factors noted above.

Again, Plaintiffs bring state law claims for aiding and abetting fraud, negligence, negligent misrepresentation, unjust enrichment, and tortious interference against both Defendants and breach of contract and breach of implied duty of good faith and fair dealing against Horne only. As to the first factor—whether the claims at issue principally deal with post-confirmation relations between the parties—this Court in *Wheeler* found that the plaintiff farmers' similar claims were factually based on the Defendants' conduct prior to EGT's bankruptcy filing but primarily concerned post-

17

confirmation relations between the parties because the plaintiffs were pursuing tort claims against non-Debtor third parties as result of the bankruptcy confirmation. Specifically, "the plaintiffs' proofs of claims [in the bankruptcy proceeding] were either resolved by settlement or disallowed." *Wheeler*, 664 B.R. at 140. In the Bankruptcy Court's Settlement Order disallowing their claims, the plaintiffs "agreed not to seek any additional recovery in the bankruptcy estate" and instead "preserved all of their options with respect to claims against non-Debtor third parties." *Id.* (quoting *In re Express Grain Terminals, LLC*, No. 21-11832, at Doc. #3420 (Bankr. N.D. Miss. Feb. 7, 2024)). The *Wheeler* plaintiffs were therefore seeking recourse against non-Debtor third parties as a result the Settlement Order. *Id.* Just as the plaintiffs in *Wheeler*, Plaintiffs here are seeking recourse for their tort claims in this action against non-debtor Defendants after disallowance of their creditor claims in the bankruptcy proceeding post-confirmation. "Pre-[confirmation], these parties were not tied together as they are now." *Chesapeake*, 70 F.4th at 284. Plaintiffs' claims principally deal with post-confirmation relations between them, thus, the first factor weighs against jurisdiction. *See Wheeler*, 664 B.R. at 140.

The second factor considers whether "antagonism or [a] claim [was] pending between the parties as of the date of the reorganization[.]" *Chesapeake*, 70 F.4th at 283. As noted, the factual basis underlying Plaintiffs' claims against Defendants occurred prior to EGT's bankruptcy filing, though this lawsuit commenced after the bankruptcy confirmation plan was entered. "Although no actual litigation was pending at the time of confirmation here, the Court finds that antagonism existed" as of the date of reorganization because the claims had already accrued before then. *Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815, 831 (W.D. Tex. 2017). For this reason, the second factor weighs in favor of "related to" bankruptcy jurisdiction. *See id.*

The third factor clearly weighs against bankruptcy jurisdiction. Here, Plaintiffs' claims are premised solely on Mississippi law and no "facts or law deriving from the [EGT's bankruptcy] reorganization or the plan [are] necessary" to Plaintiffs' claims. *Chesapeake*, 70 F.4th at 284.

In sum, the majority of the relevant factors weigh against "related to" (post-confirmation) bankruptcy jurisdiction. The Court will nonetheless briefly address Horne's arguments for the sake of completeness.

Horne provides extensive argument surrounding an indemnification agreement between it and EGT, which it alleges encompasses Plaintiffs' claims. Horne argues that the agreements' provisions—by their operation—confer on this Court "related to" bankruptcy jurisdiction. EGT and Horne's indemnity agreement appears irrelevant to the above analysis. EGT is not a party to this action nor has Horne made any effort to implead EGT. Horne has not articulated how its alleged right to be indemnified by EGT for Plaintiffs' claims pertains to the *implementation or execution* of EGT's reorganization plan. The Court sees no nexus between the two.

Horne additionally argues that the Plaintiffs' claims belong to EGT's bankruptcy estate and thus "relate to" the bankruptcy case. Citing no authority, Horne alleges that "[o]nly the trustee of EGT's Estate has the right to bring these claims because they arise from a duty directly owed to the Estate by Horne." [28] at p. 15. The Court disagrees and finds any duty owed by Horne to EGT likewise irrelevant to its jurisdictional analysis. Besides, the debtor's estate no longer exists after the confirmation of a plan, which has long ago occurred in EGT's bankruptcy proceeding. *See Craig's Stores*, 266 F.3d at 390 ("After a debtor's reorganization plan has been confirmed, the debtor's estate…ceases to exist, other than for matters pertaining to the implementation or execution of the plan. [T]here is no estate left to reorganize.").

For the reasons set forth above, the state law causes of action asserted by Plaintiffs against the Defendants do not bear on the implementation or execution of EGT's confirmation plan. Accordingly, this action does not "relate to" EGT's bankruptcy case.

### B. "Core" Bankruptcy Proceeding (28 U.S.C 157(a)-(b))

"By way of district-court referral, the bankruptcy court may 'hear and determine' certain matters falling within the jurisdictional grant of [Section] 1334." *U.S. Brass*, 301 F.3d at 304 (quoting 28 U.S.C. § 157(a)-(b)). "Specifically, [Section] 157(b)(1) gives bankruptcy courts full judicial power over 'all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under…this section[.]" *Id.* (citing 28 U.S.C. § 157(b)(1)). "Non-core proceedings that are 'otherwise related to a case under title 11' may be heard by a bankruptcy judge, but any final order or judgment must be entered by the district court. *Id.* (citing 28 U.S.C. § 157(c)(1)). "'[I]f a matter within the broad scope of [Section] 1334(b) satisfies the more precise notion of a core proceeding, [Section] 157 authorizes the bankruptcy court to decide the matter and enter a final judgment,' provided it also has the requisite constitutional authority. *Matter of McDermott Int'l, Inc.*, 2024 WL 3875141, *2 (5th Cir. Aug. 20, 2024) (quoting *U.S. Brass*, 301 F.3d at 304).

"'Although [Section] 157] does not define core proceedings, [it] provide[s] a nonexclusive list of examples.'" *Id.* (quoting *U.S. Brass*, 301 F.3d at 304). "'[W]e have held that [Section] 157 equates core proceedings with the categories of 'arising under' and 'arising in' proceedings,' but not 'related to' proceedings." *Id.* (quoting *U.S. Brass*, 301 F.3d at 304-05). "'Arising under' proceedings are those that 'involve a cause of action created or determined by a statutory provision of title 11.'" *Id.* (quoting *Wood*, 825 F.2d at 96). "'Arising in' proceedings, in contrast, 'are not

based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.'" *Id*. (quoting *Wood*, 825 F.2d at 97).

As extensively addressed above, this case does not even "relate to" EGT's bankruptcy under Section 1334(b). Nonetheless, the Court will still address whether this action could be considered a bankruptcy core proceeding.

Similar to its argument as to "related to" bankruptcy jurisdiction, Horne argues that this action is a core bankruptcy proceeding because Plaintiffs' claims are property of the estate. The Court rejects this argument for the same reason it did previously. And while, "[a]djudications of prepetition claims against a debtor's estate are core proceedings" *Chesapeake*, 70 F.4th at 281 (citing *Wood*, 825 F.2d at 92), Plaintiffs have disclaimed their creditor claims against EGT's bankruptcy estate and do not bring tort claims against EGT in this action. This action solely involves claims against non-debtor Defendants that, contrary to Horne's argument, do not affect the administration of EGT's bankruptcy estate (which is now legally non-existent).

Finally, Horne argues that this action is a bankruptcy core proceeding because Plaintiffs' claims "require the Court to interpret the Bankruptcy proceedings, including Dr. Coleman's release of claims, the Settlement Order, and the Plan." [28] at p. 25. Specifically, Horne contends such will be necessary for the Court to determine whether Plaintiffs' claims are precluded based on the language of any of these bankruptcy agreements/orders. "Within its core jurisdiction, the court may also be called upon to interpret the terms of a *confirmed reorganization plan*. *Id*. (citing *U.S. Brass*, 301 F.3d at 306) (emphasis added). The Court has already rejected the notion that Plaintiffs' claims bear on the implementation or execution of EGT's confirmation plan. As such, the Court sees no circumstance in which interpretation of the bankruptcy plan would be needed to determine

Plaintiffs' state law claims.[19] Moreover, the interpretation of documents outside of the plan (and any res judicata issue related to those documents) would necessarily fall outside of the Court's core jurisdiction.

This case does not "relate to" EGT's bankruptcy proceeding nor is it a core bankruptcy proceeding. Thus, the Court is without jurisdiction to preside over the case.

### C.  Abstention

Having found no bankruptcy jurisdiction, the Court sees no need to extensively address the parties' arguments regarding mandatory and discretionary abstention but will nonetheless address their applicability briefly.

### i.    Mandatory Abstention

Assuming arguendo that bankruptcy jurisdiction existed, district courts are required to abstain from adjudicating cases where: "(1) A motion has been timely filed requesting abstention; (2) The cause of action is essentially one that is premised on state law; (3) The proceeding is non-core or related to the bankruptcy case; (4) The proceeding could not otherwise have been commenced in federal court absent the existence of the bankruptcy case; and (5) The proceeding has already been commenced and can be timely adjudicated in a state court forum." *M&W Farms v. UMB Bank, N.A.*, 2023 WL 6516451, *2 (N.D. Miss. Oct. 5, 2023) (citing *Blakeley v. United Cable System*, 105 F. Supp. 2d 574, 583 n.9 (S.D. Miss. 2001)); 28 U.S.C. § 1334(c)(2). "The statute requires abstention only if all four conditions are met." *In re GenOn Mid-Atl. Dev., L.L.C.*, 42 F.4th 523, 539 (5th Cir. 2022).

---

[19] Horne additionally argues that "this is a core proceeding because any judgment against Horne would effectively be a judgment against the [EGT's Bankruptcy] [e]state due to the indemnity provision." [28] at p. 26. This appears to be a moot issue since legally the estate does not exist post-confirmation. *See Craig's Stores*, 266 F.3d at 390 ("After a debtor's reorganization plan has been confirmed, the debtor's estate…ceases to exist, other than for matters pertaining to the implementation or execution of the plan. [T]here is no estate left to reorganize.").

Here, the first requisite is met as Plaintiffs have included in their Motion to Remand [15] a request for this Court to abstain from adjudicating this case in the event it found bankruptcy jurisdiction. *See* [16] at p. 17. The second requisite is met as all of Plaintiffs' claims are premised on state law. As to the third requisite, it is important to note that "[m]andatory abstention applies only if an action with respect to the claims…are 'related to' the bankruptcy proceeding…" *GenOn*, 42 F.4th at 539. The Court has already found that this action is not a core bankruptcy proceeding. Again, assuming for the sake of argument that Plaintiffs' claims are at minimum "related to" EGT's bankruptcy proceeding, then the third requisite is met. The fourth requisite is met as the Court has found that there is no basis for federal jurisdiction aside from *assuming* for limited purposes that bankruptcy jurisdiction exists. Finally, the fifth requisite is met as this case, as well as all member cases, were commenced in state court, and there is no reason for this Court to believe that the cases cannot be timely adjudicated in state court. All four conditions for mandatory abstention under the statute are met and, if it had concluded that bankruptcy jurisdiction existed, the Court would nevertheless abstain and remand the case.[20]

### ii. Discretionary Abstention and Equitable Remand

Notwithstanding the above, the Court may discretionarily abstain under 28 U.S.C. § 1334(c)(1) and equitably remand a case under 28 U.S.C. § 1452(b). Section 1334(c)(1) provides that "Except with respect to a case under Chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). This discretionary abstention provision is implemented in conjunction with Section 1452(b), which provides that a district court "to which

---

[20] This is consistent with this Court's prior decision to remand a parallel lawsuit on the basis of mandatory abstention. *See M&W Farms v. UMB Bank, N.A.*, 2023 WL 6516451, *4 (N.D. Miss. Oct. 5, 2023).

[a bankruptcy-related] claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b); *see also Charles Schwab & Co. Inc. v. Girod LoanCo, LLC*, 2020 WL 3056397, at *5 (E.D. La. June 9, 2020).

The Court need not delve too deeply into this analysis as it would require the double assumption that bankruptcy jurisdiction exists and that mandatory abstention is inapplicable. In so assuming, the Court would consider the following fourteen non-exhaustive factors to determine whether discretionary abstention and equitable remand are warranted:

> (1) The effect or lack thereof on the efficient administration of the estate if the court decides to abstain; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficult or unsettled nature of applicable law; (4) the presence of a related proceeding commenced in state court or another nonbankruptcy proceeding; (5) any jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the proceeding on the court's docket; (10) the likelihood that the commencement of the proceeding in the court involves forum shopping by one of the parties (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action.

*Wheeler*, 664 B.R. at 141-42 (citing *In re Roman Cath. Church of Archdiocese of New Orleans*, 2023 WL 8359051, at *7 (Bankr. E.D. La. Nov. 30, 2023)).

"No single factor is dispositive, and the Court's determination does not turn on tallying the factors on each side. [T]he Court may, in its discretion, give greater weight to certain factors." *Id.* at 142 (quoting *In re Viper Prods. & Servs. LLC*, 2022 WL 2707879, at *2 (Bankr. N.D. Tex. July 11, 2022)) (additional citations omitted). The Court finds that discretionary abstention, and therefore equitable remand, is warranted for the same reasons previously explained by this Court

24

in *Wheeler*. *See id*. Additionally, for reasons the Court has outlined throughout this opinion, factors one through eight weigh in favor of discretionary abstention. Factors nine, ten, eleven and fourteen appear neutral. Factor twelve likewise weighs in favor of discretionary abstention as this action involves non-debtor parties and EGT is not a party to this lawsuit. Lastly, as to factor thirteen, comity strongly favors discretionary abstention because all of Plaintiffs' claims are premised on state law, including one unsettled claim for aiding and abetting fraud. *See Charles Schwab,* 2020 WL 3056397 at *6 ("Considering that the claims in this action are governed exclusively by state law and invoke no substantive right created by federal law or federal bankruptcy law, respect for state law and the interest of comity with state courts heavily favor abstention…"). None of the factors weigh against abstention. Thus, had bankruptcy jurisdiction existed and mandatory abstention not applied, the Court would exercise its discretion to abstain from adjudicating this case.

*Conclusion*

For the reasons set forth above, Plaintiffs' Motion to Remand [15] is GRANTED. It is hereby ORDERED that this cause, along with all member cases, be REMANDED to the Circuit Court of Leflore County, Mississippi for further proceedings. The Clerk of Court shall take all steps necessary to accomplish this remand.

SO ORDERED, this the 3rd day of June, 2025.

/s/ Sharion Aycock\
SENIOR UNITED STATES DISTRICT JUDGE